1
2
3
4
5
6
7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ALIJHANDRA LEWIS, et al.,                No.  2:22-cv-01927-DC-CSK

12                   Plaintiffs,               ORDER AND FINDINGS AND
                                               RECOMMENDATIONS GRANTING
13         v.                                  DEFENDANTS' MOTION FOR SUMMARY
                                               JUDGMENT
14   NATHAN BLAKESLEE, et al.,
                                               (ECF No. 21)
15                   Defendants.

16

17         Plaintiffs Alijhandra Lewis and Shicoya Manning are proceeding in this action pro

18   se.[1] Pending before the Court is Defendants Nathan Blakeslee,[2] James Manor and

19   Nicolas Frayer's motion for summary judgment or, alternatively, partial summary

20   judgment pursuant to Federal Rule of Civil Procedure 56(a).[3] (ECF No. 21.) On

21

22   ───────────────────
     [1]  This matter was referred to the undersigned pursuant to Local Rule 302(c)(21) and
23   28 U.S.C. § 636(b)(1).
     [2]  The Court notes that Defendant Nathan Blakeslee has been erroneously named as
24   Nathan Blakoslee on the docket and in parts of the Complaint. *See* Docket; ECF No. 1 at
     2. The Court will direct the Clerk of the Court to update the docket to reflect the correct
25   spelling for this defendant as Nathan Blakeslee. *See* ECF No. 1 at 1, 4, 9.
     [3]  Pursuant to the Court's November 16, 2022 Screening Order, the Court found that
26   service on Defendants Timothy McDermott and Stockton Police Department was
     inappropriate and ordered these Defendants not to be served with the Complaint. (ECF
27   No. 5 at 2 fn. 3.)  Therefore, the remaining defendants are Nathan Blakeslee, James
     Manor and Nicolas Frayer.
28
                                              1

December 17, 2024, the Court held a hearing in person at the federal courthouse.[4] (ECF No. 28.) Plaintiff Lewis did not appear in person as required for the hearing. After court staff successfully reached Plaintiff Lewis by telephone, the Court permitted Plaintiff Lewis to appear telephonically for the hearing. Plaintiff Manning failed to appear in person. Court staff tried unsuccessfully to reach Plaintiff Manning by telephone. Attorney John Mulroy appeared on Defendants' behalf. For the reasons stated below, the Court recommends GRANTING Defendants' motion for summary judgment in its entirety, and that judgment be entered for Defendants.

## I.    PROCEDURAL BACKGROUND

In their Complaint, Plaintiffs allege that on January 8, 2022, Defendants unlawfully entered Plaintiffs' home located at 4152 Minden Lane, Stockton, CA 95206 ("Subject Property") through the back sliding door and "yell[ed] that they would send the dogs in if no one [came] out." Compl. at 4 (ECF No. 1). Plaintiff Manning was the only occupant in the Subject Property at the time. *Id.* Plaintiff Manning responded to Defendants and was instructed to "back out of the house", "lay on her stomach" and was subsequently handcuffed behind her back and placed in the backseat of a squad car. *Id*. Defendants then went into the Subject Property through the back door. *Id.* Plaintiff Lewis later arrived at the Subject Property to find "three cop cars was in [the] driveway blocking [Plaintiff Lewis'] entry," the front door of the Subject Property was wide open, and "strange men were going in and out of" the front door. *Id*. at 9. When Plaintiff Lewis entered the Subject Property, "one of the officers asked" if she had a "rental agreement or a bill showing utilities in [Plaintiff's] name." *Id*. Plaintiff Lewis indicated she had to download her PG&E bill but showed Defendants a copy of her rental agreement, which the Defendants "glanced at it and then told [Plaintiff Lewis] that [she] had 24 hours to vacate the premises." *Id*. Plaintiffs allege Mr. Hidalgo "told the cops that he purchased the house at auction on January 6, 2022. He said that he spoke to [Plaintiffs'] neighbors on

---

[4]   The hearing was re-scheduled to December 17, 2024 at 9:00 a.m. at the request of Plaintiff Lewis. (ECF No. 26.)

1   both sides, and they said [Plaintiffs] just moved in two days ago" and that Mr. Hidalgo

2   "did a time-stamped walk-through video of the house on December 1, 2021, and the

3   house was empty." *Id.* Plaintiffs allege Mr. Hidalgo is lying and that they have been

4   renting the Subject Property since October 27, 2021. *Id.*

5        Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 alleging violations of the

6   Fourth Amendment. *Id.* at 3.

7   **II.   LEGAL STANDARDS FOR SUMMARY JUDGMENT**

8        Summary judgment is appropriate when it is demonstrated that the standard set

9   forth in Federal Rule of Civil Procedure 56 is met. "The court shall grant summary

10  judgment if the movant shows that there is no genuine dispute as to any material fact

11  and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

12       Under summary judgment practice, the moving party always
13       bears the initial responsibility of informing the district court of
         the basis for its motion, and identifying those portions of "the
14       pleadings, depositions, answers to interrogatories, and
         admissions on file, together with the affidavits, if any," which it
15       believes demonstrate the absence of a genuine issue of
         material fact.

16  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. Civ.

17  P. 56(c).) "Where the nonmoving party bears the burden of proof at trial, the moving

18  party need only prove that there is an absence of evidence to support the non-moving

19  party's case." *Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle*

20  *Corp. Sec. Litig.)*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp.*, 477 U.S. at

21  325); *see also* Fed. R. Civ. P. 56 advisory committee notes to 2010 amendments

22  (recognizing that "a party who does not have the trial burden of production may rely on a

23  showing that a party who does have the trial burden cannot produce admissible

24  evidence to carry its burden as to the fact"). Indeed, summary judgment should be

25  entered, after adequate time for discovery and upon motion, against a party who fails to

26  make a showing sufficient to establish the existence of an element essential to that

27  party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*,

28  477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *see Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987), *overruled on other grounds as stated in Flood v. Miller*, 35 F. App'x 701, 703 n.3 (9th Cir. 2002).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's notes to 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it

4

is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue of material fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586 (citation omitted).

## III.    UNDISPUTED FACTS ("UDF")

For purposes of summary judgment, the undersigned finds these facts are undisputed. Where Plaintiffs failed to properly address or respond to Defendants' Statement of Undisputed Facts ("SUDF") as required, this Court considers the fact undisputed. *See* Fed. R. Civ. P. 56(e)(2). Plaintiffs only partially addressed one of Defendants' undisputed facts, Undisputed Fact No. 7, that "Lorenzo Hidalgo was told by neighbors that no one had been living at the property until recently when the neighbor saw a UHaul truck arrive at the property." *See* Pls. Opp. at 2 ¶ 4; Defs.' SUDF No. 7 (ECF 21-2 at 3).

1.  The incident occurred on the afternoon of January 8, 2022 at 4152 Minden Lane, Stockton, CA 95206 ("Subject Property"). Compl. at 4; Declaration of Nathan Blakeslee ¶ 2, Exh. A (January 8, 2022 Stockton Police Department Incident Report regarding the Subject Property) (ECF No. 21-4).

2.  Capital Equity Management Group is the legal owner of the Subject Property. Declaration of Lorenzo Hidalgo ¶ 2, Exh. A (Trustee's Deed Upon Sale as to the Subject Property) (ECF No. 21-5).

3.  Lorenzo Hidalgo is an authorized representative of Capital Equity Management Group. Hidalgo Decl. ¶ 1.

4.  On January 6, 2022, Capital Equity Management Group purchased the Subject Property at a foreclosure auction. Hidalgo Decl. ¶ 3, Exh. A at 2.

5.  Prior to January 8, 2022, Lorenzo Hidalgo and an employee of the Trust that

previously owned the Subject Property, conducted an inspection of the Subject Property and the Subject Property was empty at this time. Hidalgo Decl. ¶ 4; Blakeslee Decl. Exh. A.

6. On January 8, 2022, Defendants responded to a call by Lorenzo Hidalgo regarding squatters trespassing onto the Subject Property. Hidalgo Decl. ¶ 8; Blakeslee Decl. ¶ 2, Exh. A.

7. On January 8, 2022, Lorenzo Hidalgo arrived at the Subject Property and observed two individuals leave the driveway and observed that the door handle and locks of the front door of the Subject Property had been changed since the inspection with the Trust employee. Hidalgo Decl. ¶ 5; Blakeslee Decl. ¶ 4, Exh. A.

8. Lorenzo Hidalgo spoke with neighbors of the Subject Property and was informed that the neighbors had observed individuals breaking into the rear window of the property. Hidalgo Decl. ¶ 6; Blakeslee Decl. Exh A.

9. Lorenzo Hidalgo provided Defendants with Capital Equity Management Group's proof of ownership of the Subject Property. Blakeslee Decl. ¶ 5.

10. Defendants were authorized by Lorenzo Hidalgo to enter the Subject Property and conduct a search of the property on January 8, 2022. Hidalgo Decl. ¶ 9; Blakeslee Decl. ¶ 6.

11. On January 8, 2022, Defendants conducted an inspection of the Subject Property. Defendants walked to the back of the property and observed the rear window was broken. Defendant Blakeslee was able to reach in through the broken rear window to unlock the rear slider door. Once the rear slider door was unlocked, Defendants began making announcements. Blakeslee Decl. ¶ 6, Exh. A.

12. Plaintiff Manning called out that she was coming and exited the Subject Property. Plaintiff Manning was placed in handcuffs and was placed in Defendant Blakeslee's patrol vehicle while inspection of the Subject Property

continued. Blakeslee Decl. ¶ 6, Exh. A; Compl. at 4.

13. Defendants subsequently conducted a search of the Subject Property and found no one else inside the property. Blakeslee Decl. ¶ 7, Exh. A.

14. After clearing the Subject Property, Defendants removed Plaintiff Manning from the patrol vehicle and removed her handcuffs. *Id.*

15. Plaintiff Manning informed Defendants that she rented a room at the Subject Property from Plaintiff Lewis. Hidalgo Decl. ¶ 10; Blakeslee Decl. ¶ 7, Exh. A.

16. Plaintiff Lewis subsequently arrived a short time later at the Subject Property and provided Defendants with a purported lease agreement that was dated October 16, 2021. Blakeslee Decl. ¶¶ 7-8, Exh. A; Compl. at 9.

17. After being presented with Plaintiff Lewis' purported lease agreement, Defendants informed Lorenzo Hidalgo that this was a civil matter, and that Defendants would not be removing Plaintiffs from the Subject Property without a court order. Hidalgo Decl. ¶ 12; Blakeslee Decl. ¶¶ 9-10, 12.

18. Plaintiffs were not arrested or removed from the Subject Property. Blakeslee Decl. ¶ 11, Exh. A.

19. In May 2022, Plaintiff Lewis was evicted from the Subject Property in civil eviction proceedings in state court. Hidalgo Decl. ¶ 13, Exh. B (San Joaquin County Superior Court's Eviction Information for the Subject Property dated May 13, 2022).

## IV.   42 U.S.C. § 1983 – FOURTH AMENDMENT CLAIMS

### A.   The Parties' Arguments

Defendants move for summary judgment on Plaintiffs' § 1983 claims on the grounds that: (1) Plaintiffs had no legal right to be in the Subject Property and therefore did not have an objectively reasonable expectation of privacy while they were in the Subject Property, and alternatively, even if Plaintiffs had a reasonable expectation of privacy, Defendants' search was reasonable; and (2) the detainment of Plaintiff Manning during Defendants' search of the Subject Property was reasonable, and Plaintiff Lewis

7

1   was never detained. Defs.' Mot. at 5-12 (ECF No. 21-1).

2          In their opposition, Plaintiffs argue they had a legal right to occupy the Subject

3   Property as renters and that Defendants did not have the right to enter their home and

4   seize them without a warrant pursuant to the Fourth Amendment. Pls.' Opp'n at 1-2

5   (ECF No. 27).[5] Plaintiffs indicate Lorenzo Hidalgo is "lying when he said the neighbors

6   told him we moved into the house 2 days prior to that day of January 8, 2022." *Id*. at 2.

7   Plaintiffs do not submit any evidence in support of their opposition. *See id*.

8          In reply, Defendants argue that Plaintiffs merely repeat the allegations raised in

9   their Complaint without providing evidence to support their allegations or contradict the

10  evidence submitted by Defendants. Defs.' Reply at 2 (ECF No. 24). Defendants note that

11  Plaintiffs have again failed to produce the purported lease agreement or PG&E bill to

12  support Plaintiffs' argument that they had a legal right to occupy the Subject Property as

13  renters. *Id*. Further, Defendants contend that the search of the Subject Property, and

14  subsequent detainment of Plaintiff Manning, was reasonable given Defendants' belief

15  that there were trespassers on the Subject Property. *Id*. at 2-3. Defendants counter that

16  Plaintiffs' arguments fail to address or contradict Defendants' undisputed evidence. *Id*. at

17  3.

18         **B.     Legal Standards for Section 1983 Claims**

19         Section 1983 provides that "[e]very person who, under color of any [state law]

20  subjects, or causes to be subjected, any citizen of the United States… to the deprivation

21  of any rights, privileges, or immunities secured by the Constitution… shall be liable to the

22  party injured…." 42 U.S.C. § 1983. "Section 1983 does not create substantive rights; it

23  merely serves as the procedural device for enforcing substantive provisions of the

24  Constitution and federal statutes." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir.

25  1991) (citing *Chapman v. Houston Welfare Rights Org*., 441 U.S. 600, 617 (1979)).

26         To succeed on a Section 1983 claim, a plaintiff must demonstrate that the action

27

28  [5]   *See* Section IV.C.1 below regarding Plaintiffs' opposition.

1　(1) occurred "under color of state law," and (2) resulted in the deprivation of a

2　constitutional or federal statutory right. *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir.

3　1988); *see also Lugar v. Edmondson Oil Co*., 457 U.S. 922, 924 (1982). Under the

4　Fourth Amendment, "[t]he right of the people to be secure in their persons, houses,

5　papers, and effects, against unreasonable searches and seizures, shall not be violated,

6　and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV.

7　　　　Here, the parties do not dispute Defendants acted under color of state law during

8　the incident on January 8, 2022.

9　　　　**C.　Discussion**

10　　　　The Court recommends that Defendants' motion for summary judgment be

11　granted, and judgment be entered for Defendants.

12　　　　　　1.　Plaintiffs' Oppositions

13　　　　Plaintiffs' opposition to Defendants' motion for summary judgment was due on

14　November 4, 2024. Plaintiffs' first opposition was filed on November 6, 2024, but was not

15　signed by Plaintiffs and is therefore stricken. (ECF No. 23.) Rule 11(a) of the Federal

16　Rules of Civil Procedure requires the Court to strike an unsigned paper unless the

17　omission is promptly corrected. *See also* E.D. Cal. Local Rule 131(b). The Court

18　provided Plaintiffs with an opportunity to resubmit their opposition with their signatures

19　by December 10, 2024. (ECF No. 26.) Plaintiffs' second opposition, which is signed, is

20　identical to the first opposition and was filed on December 10, 2024. (*Compare* ECF No.

21　23, *with* ECF No. 26.) Though Defendants are correct that Plaintiffs' opposition is

22　untimely, given Plaintiffs' pro se status, the Court will consider Plaintiffs' second

23　opposition in its review of Defendants' summary judgment motion.

24　　　　　　2.　Plaintiffs' Fourth Amendment Search Claim

25　　　　Defendants argue that the evidence shows that Plaintiffs did not have a legal right

26　to be on the Subject Property and therefore did not have a legitimate expectation of

27　privacy under the Fourth Amendment. Defs.' Mot. at 5-6. Defendants contend Plaintiffs

28　were unlawfully residing at the Subject Property as squatters at the time of incident, and

that any expectation of privacy at the property was objectively unreasonable. *Id*. (citing *Zimmerman v. Bishop Estate*, 25 F.3d 784, 787-88 (9th Cir.1994); *Olvera v. City of Modesto*, 38 F. Supp. 3d 1162, 1165 (E.D. Cal. 2014)). Defendants further contend Plaintiffs have not presented any evidence to establish they had a legal right to be on the Subject Property "other than a single PG&E bill" and that Plaintiffs have not produced "their alleged lease agreement in their initial disclosures and have not responded to discovery requests." *Id*. at 6. Defendants argue the evidence supports Plaintiffs are squatters because prior to the incident, Lorenzo Hidalgo, an authorized representative of the legal owner of the Subject Property, did a walk-through of the property after the purchase of the property at a foreclosure auction, and the property was vacant; Lorenzo Hidalgo was informed by neighbors that they had witnessed individuals breaking into the Subject property through the rear window days prior to the incident; neighbors had witnessed a U-Haul truck at the Subject Property a few days prior to the incident; and that a civil eviction process was completed in state court in May 2022 evicting Plaintiff Lewis from the Subject Property. *Id.*

The Court finds there is insufficient evidence to raise a triable issue of fact to establish Plaintiffs had an expectation of privacy in the Subject Property. Here, it is undisputed that on January 6, 2022, Capital Equity Management Group purchased the Subject Property and was the legal owner of the Subject Property. Hidalgo Decl. ¶¶ 2-3, Exh. A. It is also undisputed that Lorenzo Hidalgo, an authorized representative of the owner of the Subject Property, reported squatters trespassing onto the Subject Property and provided Defendants with consent to enter and search the Subject Property on January 8, 2022. Hidalgo Decl. ¶¶ 1, 8-9; Blakeslee Decl. ¶¶ 2, 6 & Exh. A. It is undisputed that the Subject Property was vacant a few days prior to the January 8, 2022 incident. UDF No. 5.

Plaintiffs have not presented any competent evidence to the contrary. Instead, Plaintiffs assert conclusory statements in their Complaint and in their opposition without providing evidence that they had a legal right to occupy the Subject Property. Plaintiffs

have not presented any evidence that they had a possessory interest in the Subject Property either by way of a legitimate leasehold or by owner's assent. *See Urenia v. Pub. Storage*, 2015 WL 4885998, at *5 (C.D. Cal. Aug. 14, 2015) ("Persons in a private residential property without a legal right of possession, such as squatters, do not have an objectively reasonable expectation of privacy.") (citing *Zimmerman*, 25 F.3d at 787)). The Court finds Plaintiffs did not have a legal right to occupy the Subject Property. *See Zimmerman*, 25 F.3d at 787. The evidence before the Court on summary judgment plainly refutes Plaintiffs' allegations in their Complaint that Plaintiffs had a reasonable expectation of privacy in the Subject Property and that Defendants entered the Subject Property illegally and in violation of the Fourth Amendment. *See* Fed. R. Civ. P. 56(e).

The Court finds that Plaintiffs had no expectation of privacy in the Subject Property on January 8, 2022 because they had no legal right to occupy the Subject Property. The Court therefore recommends Defendants' motion for summary judgment as to Plaintiffs' § 1983 Fourth Amendment search claim be granted. *See Zimmerman*, 25 F.3d at 787 (holding that squatters, with no legal right to occupy the property, had no reasonable expectation of privacy pursuant to the Fourth Amendment).

The Court also finds that Defendants' search of the Subject Property was reasonable. In its determination of whether a search is reasonable, the Court must look at the context of the search, which "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bull v. City & Cnty. of San Francisco*, 595 F.3d 964, 972 (9th Cir. 2010) (internal quotation marks omitted). It is undisputed that Defendants were authorized to search the Subject Property on January 8, 2022 by Lorenzo Hidalgo, an authorized representative of the owner of the Subject Property. UDF No. 10. It is also undisputed that Defendant Blakeslee had responded to a prior call at the Subject Property a short time before January 8, 2022, and the property was vacant. Blakeslee

11

Decl. ¶ 3. Defendants reasonably believed there was possible criminal activity occurring on January 8, 2022 based on the call received that there were trespassers on the Subject Property and based on their own observations that a rear window was broken. *See* UDF Nos. 6, 11. Accordingly, the Court further finds that even if Plaintiffs had an expectation of privacy, Defendants' search of the Subject Property on January 8, 2022 was reasonable. The Court therefore further recommends Defendants' motion for summary judgment as to Plaintiffs' § 1983 Fourth Amendment search claim be granted on this additional basis.

### 3.   Plaintiffs' Fourth Amendment Seizure Claim

Defendants also move for summary judgment on Plaintiffs' Fourth Amendment seizure claim because the detainment of Plaintiff Manning was reasonable where Defendants had reasonable suspicion that an illegal entry and trespass had occurred on the Subject Property. Defs.' Mot. at 9-11. Defendants contend Plaintiff Manning's detainment was temporary and reasonably necessary to conduct a protective sweep of the Subject Property based on the suspicion of criminal activity. *Id.* at 11. Plaintiffs do not respond to Defendants' seizure arguments. *See* Pls. Opp.

Defendants also argue that Plaintiff Lewis was not detained and therefore no viable Fourth Amendment claim exists as to Plaintiff Lewis. *See* Defs.' Mot. at 11. Because the Complaint does not allege a Fourth Amendment violation relating to an illegal seizure as to Plaintiff Lewis, the Court will not address Defendants' ground for summary judgment as to this claim related to Plaintiff Lewis. *See generally* Compl.

"[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 439 (1991). A person is seized within the meaning of the Fourth Amendment "only when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S.

12

544, 553 (1980). "The Fourth Amendment permits brief investigative stops…when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Navarette v. California*, 572 U.S. 393, 396 (2014) (internal citation omitted). "Reasonable suspicion…is dependent upon both the content of information possessed by police and its degree of reliability," both of which are considered in the totality of the circumstances. *Alabama v. White*, 496 U.S. 325, 330 (1990).

The Court finds there is insufficient evidence to raise a triable issue of fact to establish Plaintiff Manning was subjected to an illegal seizure in violation of the Fourth Amendment. Instead, the evidence presented confirms that Defendants' detainment of Plaintiff Manning was temporary and reasonable given the reasonable suspicion Defendants had that criminal activity was and/or had occurred. Defendants had reasonable suspicion that Plaintiff Manning was involved in breaking into and trespassing onto the Subject Property on the day of the incident. It is undisputed that on January 8, 2022, Defendants reported to the Subject Property in response to a call from the property owner's authorized representative, Lorenzo Hidalgo, regarding squatters trespassing onto the Subject Property. UDF No. 6. Hidalgo observed two unauthorized individuals leave the driveway, observed the door handle and locks of the front door had been changed, and was informed that neighbors had observed individuals breaking into the rear window of the Subject Property. UDF Nos. 7-8; *see also Fla. v. J.L.*, 529 U.S. 266, 270 (2000) (internal citation omitted) (holding information from an anonymous tip, if "suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop"). The evidence was further supported by Defendants' own independent observations when they observed that the rear window of the Subject Property was broken. UDF No. 11. Upon calling occupants to exit the Subject Property, wherein Plaintiff Manning responded and excited, Plaintiff Manning was placed in handcuffs for a brief period while Defendants conducted a protective sweep of the Subject Property. UDF Nos. 12-13. Plaintiff Manning was subsequently

removed from the patrol vehicle and her handcuffs removed after the protective sweep was concluded. UDF No. 14.

The Court finds that Plaintiff Manning's brief detention was reasonable because it enabled Defendants to safely complete their sweep of the Subject Property in their investigation of a potential crime reported by the property owner's representative. *See Navarette,* 572 U.S. at 396. The detention was also reasonably limited in time because Plaintiff Manning was released after the sweep of the Subject Property was competed. The Court therefore concludes that the detention did not violate the Fourth Amendment. "[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1 (1986)); *see also Florida v. Royer*, 460 U.S. 491, 500 (1983) (An investigative detention must be "temporary and last no longer than is necessary to effectuate the purpose of the stop."). The evidence before the Court on summary judgment plainly refutes Plaintiffs' allegations in their Complaint that Plaintiff Manning was subjected to an illegal seizure pursuant to the Fourth Amendment. The Court recommends Defendants' motion for summary judgment be granted as to Plaintiff Manning's Section 1983 Fourth Amendment seizure claim.

## VI.   CONCLUSION

In conclusion, IT IS HEREBY ORDERED that:

1.   The Clerk of the Court is directed to update the docket to reflect that the correct name for Defendant Nathan Blakoslee is Nathan Blakeslee; and

2.   The Clerk of the Court is directed to strike Plaintiffs' unsigned opposition filed at ECF No. 23.

Further, for the above reasons, IT IS RECOMMENDED that:

1.   Defendants Blakeslee, Manor, and Frayer's motion for summary judgment (ECF No. 21) be GRANTED.

2.   Judgment be granted for Defendants, and this action be terminated.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 18, 2024

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

4, lewi1927.22

15